IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAULA OLSON,

    **Plaintiff,**

    v.

SEDGWICK COUNTY, KANSAS, et al.,

    **Defendants.**

Case No. 2:23-CV-2319-JAR

## MEMORANDUM AND ORDER

Plaintiff Paula Olson brings this action pursuant to the Americans with Disabilities Act ("ADA"),[1] as amended by the ADA Amendments Act of 2008 ("ADAAA"),[2] and the Family and Medical Leave Act ("FMLA")[3] asserting claims against her former employers, Sedgwick County and the Sedgwick County Department on Aging ("SCDA"). Plaintiff alleges that Defendants unlawfully disciplined and retaliated against her because of her disabilities, interfered with her FMLA leave, and constructively discharged her. This matter is before the Court on Defendants' Motion to Dismiss (Doc. 11) for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The motion is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court grants in part and denies in part Defendants' motion, and grants Plaintiff leave to file an Amended Complaint for the limited purposes discussed below.

### I.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative

---

[1] 42 U.S.C. §§ 12101–12213.

[2] Pub. L. No. 110-325, 122 Stat. 3553.

[3] 29 U.S.C. § 2611.

level"[4] and must include "enough facts to state a claim for relief that is plausible on its face."[5] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[6] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[7] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[8] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[9]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[10] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[11] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[12] "A claim has facial plausibility when the plaintiff pleads factual content

---

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

[5] *Id*. at 570.

[6] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[8] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[10] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[11] *Id*. at 678–79.

[12] *Id*. at 679.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

## II.   Background

The following facts are alleged in Plaintiff's Complaint.[14]  For the purposes of deciding this motion, the Court assumes these facts to be true.

Plaintiff has autism, which impedes her ability to communicate with others and process information.  Plaintiff also has migraines, which cause her pain.  Additionally, during the migraine episodes, it is extremely difficult for her to think, process information, drive, stay awake, speak, and form sentences.

Plaintiff worked for Defendants as a Senior Care Act Case Manager III from May 2018 to July 2021.  Plaintiff notified them of her autism on or around February 2020.  Then, on March 23, 2020, Plaintiff was written up for communication issues.  After this, Plaintiff spoke to her manager and asked for unspecified accommodations.  In response, Plaintiff's manager stated that Defendants were not required to make the accommodations.

On or about April 6, 2020, Plaintiff made a request to Human Resources ("HR") for accommodations that she believed were necessary.  After Plaintiff submitted her request, Plaintiff's manager told Plaintiff that she meant to tell Plaintiff to submit her request to HR. Eventually, Plaintiff was informed that the request for accommodations was approved. However, "the accommodations largely were not actually made."[15]  Plaintiff's manager often ignored the approved accommodations, such as not allowing Plaintiff to take a break when she

---

[13] *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).
[14] Doc. 1.
[15] *Id*. ¶ 22.

needed one. When Plaintiff made inquiries about the failure to follow the accommodations, she was told by her manager to "figure it out on [her] own."[16]

Plaintiff was continuously coached and written up for issues related to her autism. After Plaintiff notified her manager of her autism, Plaintiff's manager scrutinized her even more and subjected her to harassment. For instance, Plaintiff's manager yelled at Plaintiff several times when Plaintiff tried to talk to her. Plaintiff's manager also critiqued Plaintiff about Plaintiff's client interactions. Additionally, when Plaintiff tried to speak to her manager about work, her manager would state that she did not have time but would not give Plaintiff a time she would be available. Plaintiff's manager also asked Plaintiff to mostly communicate with her over email, but then would scrutinize Plaintiff's emails and tell Plaintiff they were too long, too short, or that she did not like Plaintiff's wording.

Sometime in the spring of 2021, Plaintiff brought her concerns to Crissy Magee, an ADA/FMLA Specialist at Sedgwick County HR, about Plaintiff's experience being scrutinized, harassed, and written up. Nothing was done about the complaint and Magee eventually stopped responding to Plaintiff's inquiries and complaints.

Then, in early May 2021, Plaintiff filed a formal complaint on Sedgwick County's website. That same month, Plaintiff met with Jane Link, a Work Environment Manager, and Isabella Hatfield, an Employee Relations Specialist with HR. This meeting was tape recorded. During the meeting, Plaintiff asked to be transferred to a different position or department, but was told that the County did not do that.

---

[16] *Id.* ¶ 24.

4

On or around July 23, 2021, Plaintiff requested leave for her migraines, which manager Dorsha Kirksey denied.[17]  When Plaintiff questioned this denial, she was told that SCDA had an internal policy that they followed.  However, Defendants would not provide Plaintiff with a copy of the policy or the opportunity to see it.

Plaintiff felt like she was being harassed and forced out, and her complaints were being ignored.  All of this, combined with the recent denial of her requested leave, made Plaintiff feel like she had no option but to resign on July 26, 2021.  Plaintiff did resign on that date.

## III.   Discussion

Plaintiff alleges three claims under the ADA in her Complaint: (1) disparate treatment; (2) failure to accommodate; and (3) retaliation.[18]  Plaintiff also alleges one claim under the FMLA for interference.  Defendant moves to dismiss each claim for failure to state a claim, and also argues that the Complaint should be dismissed because Plaintiff improperly named defendants.  The Court first addresses the entity arguments and finds that Plaintiff improperly named Sedgwick County and improperly sued SCDA.  As the Court explains below, the Court will grant Plaintiff leave to amend her Complaint to properly name the County, but Plaintiff's claims against SCDA must be dismissed because it is not an entity capable of being sued.

---

[17] This is the first and only time that Plaintiff names her manager as Dorsha Kirksey.  Doc. 1 ¶ 39.  The Court refrains from using Kirksey's name for prior events, because it is unclear whether she is the same manager who Plaintiff complained to earlier.

[18] The Complaint lists in the title of Count I: "disparate treatment, harassment, and denial of reasonable accommodation in violation of the ADA."  Doc. 1 at 6.  The next section of the Complaint is titled "Count IV" and charges a retaliation claim under the ADA.  Doc. 1 at 7.  This numbering could indicate that Count I was intended to assert three distinct claims, including one of "harassment" which would be construed as a hostile work environment claim.  Doc. 1 at 6.  However, Plaintiff never mentions the phrase "hostile work environment" nor references any of the claim's elements.  *See* Doc. 1.  Additionally, in Defendants' Memorandum, they anticipate that the Complaint could be construed to raise a hostile work environment claim, and argue that Plaintiff did not sufficiently plead the claim.  Doc. 12 at 10.  In her Response, Plaintiff did not respond to this assertion, nor did she mention a distinct harassment/ hostile work environment claim.  *See* Doc. 15.  Therefore, the Court interprets Count I to raise only two claims: disparate treatment and failure to accommodate, and Count IV raises the third ADA claim of retaliation.

5

Additionally, the Court denies Defendants' motion to dismiss the ADA claims because Plaintiff has stated plausible claims for disparate treatment, failure to accommodate, and retaliation. The Court dismisses Plaintiff's FMLA interference claim as uncontested and on the merits.

### A.     **Improperly Named Defendants**

Defendants assert that Plaintiff improperly named both defendants. First, Defendants note that Plaintiff sued Defendant Sedgwick County instead of suing the Board of County Commissioners of the County of Sedgwick, as required by K.S.A. § 19-105. Second, Defendants argue that the SCDA is a subordinate governmental entity which is incapable of being sued. In her response, Plaintiff argues that she named the correct defendants because federal courts do not apply state procedural laws.

#### 1.     **Defendant Sedgwick County**

Plaintiff has improperly named Sedgwick County as a defendant. Fed. R. Civ. P. 17(b)(3) states that, for all parties which are not corporations or individuals, a party's capacity to be sued in federal court is determined "by the law of the state where the court is located."[19] Under Kansas law, "[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be '[t]he board of county commissioners of the county of _____ .'"[20] Plaintiff invites the Court to undertake an *Erie*[21] analysis to determine whether K.S.A. § 19-105 is a purely procedural rule that the federal courts may set aside. But, in

---

[19] Fed. R. Civ. P. 17(b)(3).

[20] K.S.A. § 19-105 (internal quotations in original to delineate the requisite language).

[21] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938).

adhering to K.S.A. § 19-105, the Court is following a federal procedural rule.[22]  The *Erie* doctrine is inapplicable.[23]

Since Plaintiff's Complaint failed to follow the proper format, the Complaint must either be amended to name the appropriate party or the claims against Sedgwick County must be dismissed.  Plaintiff has not filed a motion for leave to amend, but has indicated a willingness to do so if the Court finds that Plaintiff improperly named Defendants.[24]  The Court finds that granting leave to amend would be appropriate due to the technical nature of this pleading error.  The Court grants Plaintiff leave to amend her Complaint to properly name the Board of County Commissioners of the County of Sedgwick as the Defendant in this matter.

### 2. Defendant SCDA

Plaintiff's claims against the SCDA must be dismissed because the department is not amenable to suit.  Kansas courts have held that "[s]ubordinate government agencies, in the absence of statutory authorization, ordinarily do not have the capacity to sue or be sued."[25]  Plaintiff has not identified any statutory authority that grants the SCDA capacity to sue or be sued.  While it was proper for Plaintiff to name her direct employer in her initial EEOC charge, she is constrained by Kansas law regarding the capacity of parties to be sued in this Court.[26]

---

[22] *See* Fed. R. Civ. P. 17(b)(3).

[23] *Erie* is likewise inapplicable because it is a doctrine designed for diversity actions, not federal questions. *See Erie R.R. Co.*, 304 U.S. at 79–80; *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018) ("State laws that solely address procedure and do not 'function as a part of the State's definition of substantive rights and remedies' are inapplicable in federal diversity actions.") (quoting *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 416–17 (2010) (Stevens, J., concurring in the judgment)).

[24] Doc. 15 at 3.

[25] *Lindenman v. Umscheid*, 875 P.2d 964, 977 (Kan. 1994) (citing *Hopkins v. Kansas*, 702 P.2d 311, 316 (Kan. 1985)).

[26] *See* Fed. R. Civ. P. 17(b)(3).

Since the SCDA is a subordinate government agency without statutory authorization indicating it is amenable to suit, Plaintiff's claims against the SCDA must be dismissed with prejudice.

    **B.**    **ADA Claims**

Defendants assert that Plaintiff failed to state a claim for disparate treatment, failure to accommodate, and retaliation under the ADA. In *Khalik v. United Air Lines*,[27] the Tenth Circuit provided an extensive analysis of the pleading standard for employment discrimination and retaliation claims under *Twombly*.[28] The court was careful to note that under *Twombly*, the plaintiff is not required to "set forth a prima facie case for each element" to successfully plead a claim of discrimination.[29] Instead, she is only required to "set forth plausible claims."[30] Nevertheless, "the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim."[31]

The *Khalik* court provided a list of facts an employment discrimination plaintiff could reasonably be expected to know and allege to satisfy the plausibility requirement of *Twombly*.[32] Such facts could include the identity of the person the plaintiff complained to about discrimination, what the response was, the context of the challenged employment action, or any other reasons the plaintiff believes discrimination or retaliation formed the basis of the decision.[33] Therefore, the Court considers both the elements of the prima facie cases of

---

[27] 671 F.3d 1188 (10th Cir. 2012).

[28] *Id.* at 1193–94.

[29] *Id.* at 1193.

[30] *Id.*

[31] *Id.* at 1192.

[32] *Id.* at 1194.

[33] *Id.*

8

Plaintiff's ADA claims, as well as the list of facts provided by the *Khalik* court, to help determine whether Plaintiff sets forth plausible claims in this case.

### 1. Disparate Treatment

The ADA prohibits covered employers from discriminating against "a qualified individual on the basis of disability."[34] A disparate treatment claim under the ADA requires the plaintiff "to establish a prima facie case of discrimination by showing that (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability."[35] The third element of the prima facie case generally requires that a plaintiff "show [s]he has suffered an 'adverse employment action because of the disability.'"[36] An adverse employment action is liberally defined in the Tenth Circuit,[37] but generally consists of "acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[38]

For the purposes of this motion, Defendants do not dispute that Plaintiff is disabled under the ADA but they dispute the second and third elements. Defendants assert that Plaintiff did not adequately allege that she was qualified for her position, nor did she sufficiently allege that she

---

[34] *Valdez v. McGill*, 462 F. App'x 814, 817 (10th Cir. 2012) (quoting 42 U.S.C. § 12112(a)).

[35] *Mason v. Avaya Commc'ns, Inc*., 357 F.3d 1114, 1118 (10th Cir. 2004) (citing *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003)).

[36] *Dewitt v. S.W. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (quoting *E.E.O.C. v. C.R. Eng., Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011)).

[37] *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir.1998).

[38] *C.R. Eng., Inc.*, 644 F.3d at 1040 (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006) (abrogated on other grounds)).

9

suffered an adverse employment action. The Court disagrees, and finds that Plaintiff presented sufficient factual matter to state a plausible claim of disparate treatment.

Beginning with whether Plaintiff was qualified for her position, Plaintiff alleges that she worked for Defendants for almost two years, without issue, before she told Defendants that she had autism and began to experience harassment.[39] This is sufficient to raise a reasonable inference that Plaintiff was qualified to perform the essential functions of her job. Additionally, when Plaintiff requested accommodations to perform her job, those accommodations were approved.[40] Though the accommodations allegedly were not made available to Plaintiff, the fact that they were approved warrants an inference that the requested accommodations were sufficient to permit Plaintiff to perform the functions of her job. These facts, and the reasonable inferences therefrom, are sufficient to plausibly allege that Plaintiff was qualified.

For the third element, Plaintiff pleads that she was disciplined and constructively discharged because of her autism. "Constructive discharge is an adverse employment action."[41] There are two elements to a constructive discharge claim: (1) plaintiff must show that she was discriminated against by her employer to the point where a reasonable person in her position would have felt compelled to resign; and (2) plaintiff actually resigned.[42] There is no doubt that Plaintiff resigned, but Defendants assert that Plaintiff has not sufficiently alleged factual matter to support the first element. The Court disagrees.

The Court assumes as true Plaintiff's allegations that, after she disclosed her autism: (1) Plaintiff was written up for communication issues; (2) Plaintiff was critiqued about her client

---

[39] Doc. 1 ¶¶ 14–16.

[40] *Id.* ¶ 21.

[41] *Rivero v. Bd. of Regents*, 950 F.3d 754, 761 (10th Cir. 2020) (quoting *Strickland v. United Parcel Serv.*, 555 F.3d 1224, 1230 n.4 (10th Cir. 2009)).

[42] *Id.* at 761 (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)).

10

interactions; (3) Plaintiff's manager yelled at Plaintiff on multiple instances when Plaintiff tried to talk to her; (4) Plaintiff's manager asked Plaintiff to mostly communicate with her over email; (5) Plaintiff's manager then critiqued the composition of those emails; and (6) when Plaintiff complained about these issues, HR eventually stopped responding to her.  These allegations are significant because Plaintiff asserts that her autism limits her ability to communicate with others.[43]  Thus, these facts establish context for why Plaintiff believed these actions were motivated by discriminatory animus.[44]  Plaintiff sufficiently pled that the manager's frequent criticism of Plaintiff's communication abilities was discrimination based on Plaintiff's autism.

Taken together with the manager's refusal to help Plaintiff in her attempt to get accommodations, and the allegation that Plaintiff was prevented from employing her approved accommodations, Plaintiff has alleged sufficient factual matter to support a constructive discharge claim.  While the standard is objective, it is based on the viewpoint of a reasonable person in Plaintiff's position.[45]  At this early stage in pleading, the Court finds that Plaintiff has plausibly alleged that a reasonable autistic person would have felt compelled to resign.

Therefore, the Court denies Defendants' motion to dismiss Plaintiff's disparate treatment claim because Plaintiff has plausibly stated a claim for disparate treatment under the ADA.

### 2. Failure to Accommodate

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would

---

[43] *Id.* ¶ 12.

[44] *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (listing as a fact that Plaintiff should know, "[s]he should know why she believed that action was connected with discriminatory animus.").

[45] *Rivero*, 950 F.3d at 761 (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)).

11

impose an undue hardship on the operation of the business of such covered entity."[46] The prima facie case requires that a plaintiff demonstrate that "(1) she is disabled; (2) she is 'otherwise qualified'; and (3) she requested a plausibly reasonable accommodation."[47]

As discussed above, Plaintiff sufficiently alleges that she is qualified. However, Defendants assert that Plaintiff did not adequately plead that she requested reasonable accommodations. The Court disagrees.

Plaintiff asserts that she requested reasonable accommodations, without specifying which accommodations she requested.[48] However, Plaintiff does allege that her manager prevented her from taking breaks, suggesting that Plaintiff requested breaks as an accommodation.[49] Nonetheless, the Court can plausibly infer both that Plaintiff requested accommodations and that the requested accommodations were reasonable because they were approved.[50] And despite this initial approval, Plaintiff alleges that the accommodations were largely "not actually made."[51] Thus, Plaintiff has alleged that she requested accommodations, which were deemed reasonable because they were approved, and that she was later prevented from implementing the approved accommodations.

Based on these facts, Plaintiff has plausibly alleged a failure to accommodate claim. Therefore, the Court denies Defendants' motion to dismiss this claim.

---

[46] 42 U.S.C. § 12112(b)(5)(A).

[47] *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (quoting *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012)).

[48] Doc. 1 ¶ 19.

[49] *Id.* ¶ 23.

[50] *Id.* ¶ 21.

[51] *Id.* ¶ 22.

### 3. Retaliation

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter."[52] To establish a prima facie case for retaliation, Plaintiff must show "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[53]

The Supreme Court has clarified that the adverse action in a retaliation claim is a distinct standard from an adverse employment action in a discrimination claim.[54] Thus, a retaliation claim does not require that the challenged adverse action be employment-related.[55] An action is considered sufficiently adverse if "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[56]

Defendants concede that Plaintiff's request for accommodation is protected activity under the Act, but argue that Plaintiff did not suffer a materially adverse action. Plaintiff pleads that the adverse action she suffered was her constructive discharge.

---

[52] 42 U.S.C. § 12203(a); *see Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016).

[53] *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

[54] *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 63 (2006); *see also Proctor*, 502 F.3d at 1208 n. 4 ("Because the ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), contains essentially the same language as Title VII's provision, 42 U.S.C. § 2000e–3(a), *White* applies in the ADA context as well.").

[55] *See id.* at 64.

[56] *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.D.C. 2006)); *Proctor*, 502 F.3d at 1208.

13

As an initial matter, Plaintiff alleges two protected activities in her complaint: (1) requesting accommodations; and (2) filing a formal complaint of discrimination with the County. Either would suffice to plausibly allege the first element of a retaliation claim. Moreover, in addition to her constructive discharge claim, the Court finds that Plaintiff has plausibly alleged multiple actions that are sufficiently adverse for a retaliation claim. Plaintiff alleges that (1) she was disciplined by being "written up";[57] (2) she was denied a transfer; (3) her approved accommodations were not implemented; (4) she was criticized and harassed about her communication; and (5) she was denied leave for her migraines and then prevented from seeing the leave policy. It is plausible that these actions, taken together or individually, could dissuade a reasonable worker from making a discrimination complaint.[58] Thus, Plaintiff sufficiently pleads that she suffered a materially adverse action.

Turning to causation, Plaintiff must make a facial showing that it was her request for accommodations or complaint about discrimination which spurred the adverse action(s). Plaintiff notified her employer of her autism in or around February 2020.[59] Plaintiff first requested accommodations from her manager soon after, in March 2020.[60] The alleged discipline, harassment, and criticism follows both events and cumulatively contributed to the constructive discharge. Additionally, Plaintiff filed her formal complaint in May 2021, and was allegedly constructively discharged on July 23, 2021. While "a three-month gap between protected activity and an adverse action is too long to support an inference of causation on its

---

[57] Doc. 1 ¶ 16; *see Bekkem v. Wilkie*, 915 F.3d 1258, 1273–74 (10th Cir. 2019) (finding a retaliation claim based upon the adverse action of a formal reprimand to satisfy the plausibility standard).

[58] *See White*, 548 U.S. at 68.

[59] *Id.*

[60] *Id.* ¶¶ 16–17.

14

own,"[61] this two-month gap between Plaintiff's complaint and resignation is sufficient to plausibly allege causation.  Moreover, Plaintiff alleges more than one adverse action which closely follows her formal complaint—she also alleges that her transfer request was denied and that she was prevented from taking leave for her migraines.[62]  At this early stage in the pleadings, Plaintiff need only present a facial showing of causation.  She has met this burden.

The Court finds that Plaintiff has plausibly alleged a retaliation claim under the ADA, and therefore denies Defendants' motion to dismiss this claim.

### C. FMLA Interference

Plaintiff asserts one claim under 29 U.S.C. § 2615(a)(1) for FMLA interference.  Since Plaintiff did not respond to Defendants' motion to dismiss Plaintiff's FMLA claim, the Court grants Defendants' motion as uncontested.[63]   However, even if the Court considered the merits of the FMLA claim, it would grant dismissal for failure to state a claim.

The FMLA guarantees eligible employees substantive rights of up to twelve weeks of unpaid leave for serious health conditions and reinstatement to their former position or an equivalent position upon return from that leave,[64] and makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under [the FMLA]."[65]  To bring a successful FMLA interference claim, Plaintiff "must show that (1) [s]he was entitled to FMLA leave, (2) an adverse action by h[er] employer interfered with h[er]

---

[61] *Bekkem*, 915 F.3d at 1271 (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

[62] *See Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (listing as a fact that Plaintiff should know, "[s]he should know who she complained to about the discrimination, when she complained, and what the response was.").

[63] *See* D. Kan. Rule 7.1(c).

[64] *See* 29 U.S.C. §§ 2612(a)(1), 2614(a).

[65] 29 U.S.C. § 2615(a)(1).

right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of [Plaintiff's] FMLA rights."[66]

Plaintiff's factual allegations on her FMLA claim amount to a recitation of the prima facie case. Plaintiff alleges that she (1) was eligible for leave under FMLA; (2) had a serious health condition, migraines; (3) attempted to take leave for that serious health condition; and (4) Defendants interfered with Plaintiff's leave by denying it.[67] But Plaintiff asserts no facts to support these assertions. Plaintiff states that she was eligible for FMLA leave, without explaining how she was eligible. The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a healthcare provider."[68] Plaintiff labels her migraines as a serious health condition, but presents no factual matter about how migraines satisfy that standard.

Plaintiff's allegations are also murky regarding the details of the leave request that gave rise to this claim. She asserts that she "was subsequently denied leave for her migraines on or around July 23, 2021" and that when she questioned the denial, she was told that SCDA had an internal policy it followed.[69] Plaintiff does not allege that the leave she was denied was specifically FMLA leave, nor does she provide details about how she requested the leave. Therefore, even if the Court considered the merits, it would grant dismissal of the FMLA claim for failure to state a claim.

---

[66] *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012) (citing *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1180 (10th Cir. 2006)).

[67] Doc. 1 ¶¶ 68–72.

[68] 29 U.S.C. § 2611(11).

[69] Doc. 1 ¶¶ 39–40.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 11) is **granted in part and denied in part**.  The motion to dismiss Plaintiff's FMLA claim is granted.  The motion is otherwise denied.  Defendant SCDA is hereby dismissed.

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff shall filed an Amended Complaint by January 26, 2023, substituting the Board for the County, omitting the SCDA, and omitting the FMLA interference claim.

**IT IS SO ORDERED.**

Dated: January 16, 2024

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> UNITED STATES DISTRICT JUDGE